IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RALPH J. DAVIS<br><br>    Plaintiff,<br><br>    v.<br><br>OLIN CORPORATION, et al.,<br><br>    Defendants. | Case No. 05-CV-4001-JPG |

### MEMORANDUM AND ORDER

**GILBERT, District Judge:**

This matter comes before the Court on defendant United Steelworkers of America's Motion for Summary Judgment (Doc. 43), defendant Olin Corporation's Motion for Summary Judgment (Doc. 45), and defendants Primex Technology and General Dynamics' Motion for Summary Judgment (Doc. 47). Plaintiff Ralph J. Davis has responded to Olin's motion (Doc. 52, and filed a sur-reply, Doc. 54), responded to the United Steelworkers' motion (Doc. 51), and failed to respond to Primex Technology and General Dynamics' motion. Plaintiff's sur-reply is **STRICKEN** pursuant to S.D. Ill. Local R. 7.1(c). For the following reasons, Defendants' motions for summary judgment will be **GRANTED.**

**I.    Summary Judgment Standard**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe

the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Spath*, 211 F.3d at 396. This standard is applied with special scrutiny in cases, such as employment discrimination cases, that often turn on issues of intent and credibility. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Where the moving party fails to meet its strict burden of proof, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Michas*, 209 F.3d at 692. Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252; *accord Michas*, 209 F.3d at 692.

**II.     Background**

Plaintiff filed this suit, without the benefit of counsel, in state court on December 2, 2004 and Defendants were served December 6. Defendants subsequently removed this action to this Court January 4, 2005. Construing the evidence in the light most favorable to Plaintiff, and drawing all reasonable inferences in his favor, the admissible evidence establishes the following facts.

Plaintiff began his employment with Olin Corporation ("Olin") in August, 1981. While employed at Olin's facility in Marion, Illinois, Plaintiff was a member of the union, the United Steelworkers of America, Local 15009 ("Union"). While working for Olin, he developed carpal tunnel syndrome, which made it impossible for him to continue working. Plaintiff has not worked since September 2, 1992. Olin terminated Plaintiff's employment on March 1, 1996 pursuant to the terms of the collective bargaining agreement ("CBA") entered into between the Union and Olin. Under Article VI of the CBA, an employee could be terminated and his seniority broken by, among other things, a medical leave of absence for 36 months. Plaintiff learned of his termination in November or December of 1996. When he learned of his termination, Plaintiff contacted a union representative, who filed a grievance on his behalf and obtained holiday and vacation pay for Davis. Davis did not contact a union representative again until 2000. In December 2000, Davis complained to Dave Dowling, the local union representative, about vacation and holiday benefits he felt he was do. Davis contacted Dowling again with various complaint several times in 2002, and several more times in 2004. Davis has not received a paycheck or any other documentation evidencing continued employment or accrual of seniority from Olin, Primex, or General Dynamics since 1996.

At some point, Davis filed a workers' compensation claim for his work-related injuries.[1] Davis settled this claim in the form of an Illinois Industrial Commission Settlement Contract Lump Sum Petition and Order ("Settlement Agreement"). In that Agreement – signed November 2, 2001, approved November 23, 2001 – Davis agreed to accept $100,000.00 "as a full, final and complete

---

[1] The record does not indicate when the workers' compensation claim was filed. Though the parties presented the Settlement Agreement, that document does provide the actual date of the claim. According to the Settlement Agreement, Davis's case number was 92 WC 54531. It is unclear whether this means the claim was filed in that year, or whether the case number is only indicative of the year of Davis's injury.

settlement of any and all claims for disability and lost time benefits pursuant to the Illinois Workers' Compensation Act." (Doc. 46, Ex. C). Plaintiff has been paid the money due under the settlement. Complicating matters somewhat here, is the fact that one of the parties to this action no longer exists as a corporate entity. Effective January, 1, 1997, Olin orchestrated a spinoff of its Marion facility, creating Primex Technologies ("Primex"), an independent corporation. Defendant General Dynamics subsequently purchased Primex, and Primex no longer exists as a corporate entity.

**III.     Analysis**

Davis currently receives a pension from Olin, which is based upon the seniority he accrued until his termination in 1996 – he continued to accrue seniority for pension purposes while he was on medical leave. He claims his termination violated the Illinois Workers' Compensation Act because he was terminated while he had a pending workers' compensation claim. Because he was terminated unlawfully, he claims he should be entitled to a pension benefit calculated as if he continued to work for Olin (then Primex and General Dynamics) until he would have retired – sometime in 2003. Primex and General Dynamics should be liable for these benefits as well, he maintains, for if he would not have been terminated, he would have become an employee of Primex, then General Dynamics, like the other employees of the Marion facility. For the same reasons, Davis claims he is entitled to holiday and vacation benefits from these companies as well. Davis also claims the Union should be liable for these benefits as a result of its failure to include a provision in the CBA governing workers' compensation claims and its failure to file a grievance on his behalf in response to complaints he lodged with the local Union representative. Olin denies liability in this case for a number of reasons. Principally, Olin maintains it terminated Davis as allowed under the CBA. It denies the IWCA provides for liability under the circumstances, and that

even if he could state a claim under the Act, Olin argues that such claim would be barred by the applicable statute of limitations. Further, Olin argues that any claim for additional benefits for his work-related injuries is barred by the settlement of his workers' compensation claim. General Dynamics and Primex claim Plaintiff never became an employee of either company. For this reason, they claim they cannot be held liable for benefits under any theory of wrongful termination. Finally, the Union argues that the only theory under which it could be liable would be for a breach of its duty of fair representation. Any claim under that theory, according to the Union, would be barred by applicable statute of limitations. They maintain that even if the statute of limitations did not bar this action, summary judgment should be entered in their favor because Plaintiff has failed to introduce any evidence showing they acted in an arbitrary or discriminatory manner and that they did not act in bad faith.

        **A.**     **Davis's Claims against Olin**

It appears Davis makes two claims against Olin. First, he contends his termination was in violation of the Illinois Workers' Compensation Act because he was terminated while he had a workers' compensation claim. Second, he appears to claim the company should have provided or paid for medical procedures to allow him to return to work. In his pleading entitled "More Definite Statement", Davis explains that if "the company would of fixed me up and let me return back to work I would have had my Life, Liberty, And pursuit of Happiness." He continues, "Because of the Company's Dispute with the Doctors about my injuries, I have lost my Life, Liberty, And Pursuit of Happiness." That these are his two primary claims against Olin was confirmed in his deposition. Davis goes in another direction altogether in his response to Olin's motion for summary judgment (and his response to the Union's motion), when he alleges for the first time that his claims fall under

the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*.

### i. Workers' Compensation

Seemingly, the Court's adjudication of Davis's workers' compensation claim is barred by 28 U.S.C. § 1445(c). Section 1445(c) provides that "[a] civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States." Two questions necessarily arise: whether Davis's claim arises under the workers' compensation laws of Illinois; and, whether 1445(c) is procedural, rather than jurisdictional, such that it can be waived. Here, the answer to the latter question makes the former moot. Though it does not appear that the Seventh Circuit has addressed the precise nature of § 1445(c) in this context, other Circuits have found its restriction procedural and subject to waiver in the absence of an objection made pursuant to 28 U.S.C. 1447(c). *In re Excel Corp.*, 106 F.3d 1197, 1201 n.4 (5th Cir. 1997); *Williams v. AC Spark Plugs*, 985 F.2d 783, 786 (5th Cir. 1993); *Vasquez v. North County Transit Dist.*, 292 F.3d 1049, 1062 (9th Cir. 2002) (citing *Williams*, 985 F.2d at 786). Finding no authority to the contrary in this Circuit, the Court finds these decisions persuasive. Davis did not object to the removal of this action thus his workers' compensation claim is properly before this Court.

Davis claims it is unlawful under the Illinois Workers' Compensation Act, 820 ILCS 305/1-305/30, for an employer to discharge an employee who has a workers' compensation claim. A review of the Act discloses no such prohibition, which is probably sufficient to warrant a dismissal of this claim. However, one litigating *pro se* is not required to explicitly refer to the proper statute or legal theory in order to state a cause of action as long as relief is possible under that statute or theory consistent with the facts pled. *Kennedy v. National Juvenile Detention Ass'n*, 187 F.3d 690,

695 (7th Cir. 1999). The Court has an obligation to construe Davis's pleadings liberally, but he is not exempt from court rules. *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001). The Court is also not obliged to craft arguments or perform necessary legal research to cure substantive deficiencies. *See id*. From his pleadings it is reasonably clear that Davis relies on 820 ILCS 305/4(h), the Act's anti-discrimination provision.[2] The facts pleaded might also be sufficient to state a claim for the independent tort of retaliation under *Kelsay v. Motorola, Inc.*, 384 N.E.2d 353 (Ill. 1978). Under either regime, his claim is time-barred under the applicable statute of limitations. *See* 735 ILCS 5/13-205; *Henon v. Lever Bros. Co.*, 449 N.E.2d 196, 197 (Ill. App. Ct. 1st Dist. 1983) (finding the limitations period for *Kelsay* torts 5 years). There is no explicit limitations period in the IWCA governing a cause of action under 820 ILCS 305/4(h). As such, actions under that section – to the extent such actions are independent of the *Kelsay* tort – fall under 735 ILCS 5/13-205 as well. The limitations period is triggered in retaliation claims on the date of termination. *Webb v. County of Cook*, 656 N.E.2d 85, 88 (Ill. App. Ct. 1 Dist. 1995). Even assuming that the limitations period was triggered sometime in December of 1996, it had run long before Davis filed this action.

---

[2] 820 ILCS 305/4(h) provides:
    It shall be unlawful for any employer, insurance company or service or adjustment company to interfere with, restrain or coerce an employee in any manner whatsoever in the exercise of the rights or remedies granted to him or her by this Act or to discriminate, attempt to discriminate, or threaten to discriminate against an employee in any way because of his or her exercise of the rights or remedies granted to him or her by this Act.

It shall be unlawful for any employer, individually or through any insurance company or service or adjustment company, to discharge or to threaten to discharge, or to refuse to rehire or recall to active service in a suitable capacity an employee because of the exercise of his or her rights or remedies granted to him or her by this Act.

In any event, Davis has failed to come forth with any evidence to show he was discharged in retaliation for having a workers' compensation claim. Olin is entitled to summary judgment on this claim.

### ii. Insufficient benefits for work-related injury

Davis's claims for additional benefits for his work-related injuries are barred by the Settlement Agreement he signed in 2001. Under the Agreement, Davis received $100,000.00 "as a full, final and complete settlement of any and all claims for disability and lost time benefits pursuant to the Illinois Workers' Compensation Act . . . for the within described occurrence or exposure plus all known and unknown injuries which allegedly resulted from said occurrence or exposure." The parties agreed that the $100,000.00 represented "the entire measure of liability owed [Davis] by [Olin] as a result of this claim or any claimed injuries while [Davis] was employed by [Olin]." Under Illinois law, this Agreement, as a compromise settling disputed claims, bars Davis's claims for additional benefits. *See Towne v. Town of Libertyville*, 546 N.E.2d 810, 815 (Ill. App. Ct. 2d Dist. 1989) (finding that the settlement of disputed claims bars a party to a settlement "from raising the issues that could have otherwise been raised before the trial court"); *In re Marriage of Wilder*, 461 N.E.2d 447, 460 (Ill. App. Ct. 1st Dist. 1983) ("[P]ublic policy favors . . . settlements, and . . . in the absence of mistake or fraud, the agreement is conclusive on the parties as to all matters included therein . . . and operates as a merger of all included claims, as well as a bar thereto"); *Gatto v. Walgreen Drug Co.*, 337 N.E.2d 23, 29 (Ill. 1975). Davis does not claim the settlement was invalid for any reason (i.e., fraud or mistake), he just claims he should have received additional care or benefits. Clearly, such claims falls under the terms of the Settlement Agreement, and are therefore barred. Further, because the Illinois Industrial Commission approved the

Settlement Agreement, "it becomes *res judicata* as to matters adjudicated and agreed upon . . . and is conclusive as to every matter that could have been offered to sustain the same claim or demand." *J & R Carrozza Plumbing Co. v. Industrial Comm'n of Illinois*, 717 N.E.2d 438, 441 (Ill. App. Ct. 1st Dist. 1983) (citations omitted). Finally, to the extent he requests judicial review of the settlement agreement, such review is time-barred. One must seek review of an approved settlement "within 20 days of the receipt of notice of the decision of the Commission." 820 ILCS 305/19(f)(1). The window to address the terms of the settlement has closed.

The one piece of evidence Plaintiff relies on in his response to Olin's motion is a document which he attached to his complaint (Doc. 2-3, page 2). The document appears to be an addendum to a letter to Plaintiff's attorney (on the workers' compensation matter) written by Brian Lewis (the attorney representing Primex and General Dynamics here) in 1997. The document lists a sequence of events relating to Plaintiff's employment history with Olin. The entry dated "03-01-96" reads "Terminated/Removed from Seniority List (on leave over 3 years)." The most important entries, according to Davis, are those for "12-31-96" which read "Remained on Olin Long Term Disability, stayed an Olin Employee was not transferred with Primex Spin Off)" and "Because the Workers Compensation Claims on Ralph Davis were a Marion Operation Issue, it was agreed by Olin and Primex that those claims would be carried by Primex." It is unclear how this document helps Davis. It is internally contradictory insofar as it states that Davis was terminated on March 1, 1996, yet remained an employee as of December 31, 1996. In his response to Olin's motion for summary judgment, Davis offers this document to show he continued to be an employee of Olin after 1996. Not only is this without support in the record before the Court, but it would completely undermine his unlawful discrimination claim. Further, it suggests that any workers' compensation claims

should be paid by Primex, not Olin.  The Court fails to see how this document helps Plaintiff's case.  For the foregoing reasons, Olin's motion for summary judgment is **GRANTED**.

### iii.     FMLA Claims

In his responses to Olin's and the Union's motions for summary judgment, Davis argues that his claims are based on the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. This is his first mention of the FMLA in any pleading.  Even though this is an inappropriate time to be adding new claims, *Auston v. Schubnell*, 116 F.3d 251, 255 (7th Cir 1997), the Court will give Davis the benefit of the doubt and construe these portions of his responses as a motion for leave to amend his Complaint.  The Court has reviewed these claims, and, to the extent he requests leave to amend his Complaint, his request is denied.  It is true that leave to amend a complaint should be freely given when justice so requires.  Fed.R.Civ.P. 15(a).  However, it is proper for a court to deny leave when the amendment would be futile – such as when it would not survive a motion for summary judgment. *Bethany Pharm. Co. v. QVC, Inc.*, 241 F.3d 854, 860-61 (7th Cir. 2001).  Here his claims would not survive summary judgment because they would be barred by the statute of limitations. Assuming Davis could state a claim for a willful violation of the FMLA, such a violation would be subject to a three-year period of limitation that ran from the "date of the last event constituting the alleged violation." 29 U.S.C. § 2617(c).[3] Employees can obtain relief under the

---

[3] The FMLA provides eligible employees of certain employers with substantive rights.  It provides up to twelve weeks of leave during a year for, among other things, a serious health condition that makes an employee unable to work.  29 U.S.C. §2612(a)(1)(D).  To protect this right and others, it is unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" under the FMLA. 29 U.S.C. § 2615(a)(1); *Thomas v. Pearle Vision, Inc.*, 251 F.3d 1132, 1139 (7th Cir. 2001).  As further protection, the FMLA prohibits an employer from discharging or otherwise discriminating against an employee for exercising his rights under the FMLA.  29 U.S.C. § 2615(a)(2).

FMLA in two ways: (1) by establishing a deprivation of a right guaranteed by the FMLA and (2) by establishing discrimination based upon the exercise of rights under the FMLA. *King v. Preferred Tech. Group*, 166 F.3d 887, 891 (7th Cir. 1999). Assuming Davis could state a claim under either of these theories, the last event which could have constituted a violation would have been his termination, which was over 8 years ago. Further, there is no entitlement under the FMLA to the accrual of seniority while on medical leave. 29 CFR § 825.215 (1995). To the extent Plaintiff's responses to defendants' motions for summary judgment could be construed as motions for leave to amend his complaint, those motions are **DENIED** as futile.

### B. Davis's Claims against the Union

Davis did not set forth any specific statutory scheme under which he contends the Union is liable. However, his claims against the Union seek to address the same fundamental problem as those against Olin, Primex and General Dynamics – his failure to receive a pension benefit calculated as if he had worked until 2003. After reviewing the Complaint and the pleading entitled "A More Definite Statement," (Doc. 38), it appears that Davis claims the Union acted improperly by failing to include a provision regarding workers compensation in the CBA – presumably a provision regarding the termination of employees with active workers' compensation claims. In his more definite statement, Davis also claims that Dave Dowling (the local union representative) should have filed a grievance on his behalf on various matters of compensation, including his pension, his temporary total disability benefit, and his vacation and sick pay.

The Union claims that it owed no duty to Davis other than the duty of fair representation under the National Labor Relations Act. Any claim for a breach of the duty of fair representation is subject to a six-month limitations period, *see DelCostello v. Teamsters*, 462 U.S.151, 154-55

(1983); *Chapple v. Nat'l Starch & Chem. Co.*, 178 F.3d 501, 505 (7th Cir. 1999), which begins to run when the plaintiff discovered or should have discovered the alleged violation. *Christiansen v. APV Crepaco, Inc.*, 178 F.3d 910, 914 (7th Cir. 1999). The period can begin when the union notifies an employee that it will not pursue the grievance. *Chapple*, 178 F.3d at 505. The Union's inaction can also start the period as well – when the plaintiff should have known the Union would not be taking any further action to redress plaintiff's concerns. *Richards v. Local 134, Int'l Bhd. of Elec. Workers*, 790 F.2d 633, 636 (7th Cir. 1986); *Metz v. Tootsie Roll Industries, Inc.*, 715 F.2d 299, 304 (7th Cir. 1983). When an employee repeatedly complains to her union representative and that representative takes no action, the employee's knowledge of the inaction triggers the limitations period. *Christensen*, 178 F.3d at 914-15. In *Christensen*, an employee who felt her employer had unfairly denied her requests for a pay increase complained to her union representative numerous times over a five-year period. *Id.* at 912. She argued the period of limitations did not start running until she received actual notice that the union would not file a grievance on her behalf. The Court rejected her argument. In light of the strong federal policy favoring prompt labor disputes, the Court found that her knowledge of the union's failure to file the grievance started the period running. *Id.* at 915. For similar reasons, Plaintiff's claims against the Union are time-barred.

Davis complained to the Union about certain vacation and holiday benefits – presumably relating to the years he was on leave from Olin – soon after realizing that Olin had terminated his employment in late 1996 or early 1997. The Union filed a grievance on his behalf and was able to obtain the benefits Davis requested. It is reasonable to assume that this experience gave him a working knowledge of how such interactions take place. It appears that Davis next contacted Dowling in late December 2000, complaining of Olin's failure to compensate him for the vacation

and holiday entitlement he felt he was due. Dowling contacted Steve Preston, the Manager of Administration for Primex – who reviewed Plaintiff's status and told Dowling that he believed the termination was appropriate under the terms of the CBA and Primex's position that Davis never became an employee of Primex. Dowling relayed this information to Davis, along with a copy of the CBA he received from Preston, and indicated his impression that Olin did not violate its duties with regard to him. This conversation took place January 10, 2001. This communication plainly had the effect of letting Davis know that the Union was not going to file a grievance on his behalf. Thus, the limitations period ran sometime in mid-2001 on a breach regarding any grievance Davis claims should have been filed for his holiday and vacation pay. Even if Dowling's remarks did not amount to actual notice, the lack of activity on Dowling's part was sufficient to start the period as well.

Davis contacted Dowling again sometime in 2002, this time complaining that he was entitled to increased pension benefits. In response to Plaintiff's request, Dowling sent him another copy of the CBA, and requested additional employment information. Davis failed to respond. He contacted Dowling again sometime in August 2002 with the same complaints. Again, Dowling sent Davis a copy of the CBA and requested additional information, but Davis failed to respond. After these complaints in 2002, Dowling did not hear from Davis again until May 2004. This time, Davis complained of his pension and claimed he should have been transferred to Primex in the spinoff. Any claim for breach of the Union's duty of fair representation as a result of the foregoing events is time-barred. Dowling's inaction on Plaintiff's complaints in 2002 started the limitations period running. Though Dowling's inaction was probably the result Plaintiff's failures to respond to his requests, Dowling's failure to file a grievance between August 2002 and May 2004, was sufficient

to put Davis on notice that no grievance was going to be filed.  This would have put Davis on notice, at the latest, sometime in late 2002.  The limitations period has run on any breach regarding pension benefits.

The Court fails to see how Davis is entitled to relief on account of the Union's failure to include a provision regarding workers' compensation in the CBA.  First, it is not clear what Plaintiff believes should have been included.  Second, it is not even clear that the CBA lacks a provision regarding workers' compensation as the entire CBA is not in the record.  In the end, the Court simply does not see a theory upon which this claim can be premised.  If it were to be premised on the duty of fair representation, such a claim would certainly be barred under the statute of limitations, as the CBA at issue was entered into in 1989.  The Union's motion for summary judgment is **GRANTED**.[4]

### C.   Davis's Claims against Primex and General Dynamics

Davis claims Primex and General Dynamics are liable for his pension and other benefits as well.  Davis believes he is entitled to a pension benefit calculated as if he continued to accrue seniority until the date he would have been able to retire if he had continued working, apparently sometime in 2003.  Davis claims Primex and General Dynamics should be liable for these and other benefits because if he would not have been terminated by Olin, he would have become an employee of Primex and eventually General Dynamics. It is undisputed that employees of the Marion facility became employees of Primex after the spinoff in 1997.  General Dynamics and Primex claim they cannot be held liable because Davis has admitted he was terminated before the spinoff.  Davis also

---

[4]The Court notes that the Union did not file an Answer in this case.  However, because Plaintiff failed to seek entry of default (or some other action with regard to this oversight), the Union's failure to answer does not preclude an entry of summary judgment in its favor.

admitted that he never received any indication from Olin that he continued to be employed after 1996. Further, he received no documentation from Olin, Primex or General Dynamics that he became (or remained) an employee after that date, and received no indication from these companies that he continued to accrue seniority.

Though Davis responded to Olin's and the Union's motions for summary judgment, he failed to respond to Primex and General Dynamics' motion. Even though Davis is proceeding *pro se* he is still bound by court rules. *Anderson*, 241 F.3d at 545. Thus, his failure to respond is deemed an admission that the moving party's version of the facts is true. *Flynn v. Sandahl*, 58 F.3d 283, 288 (7th Cir. 1995). Davis has not necessarily waived his legal argument based on those facts, *see id.*, but it is within the Court's discretion to deem his failure to respond as an admission of the merits of the motion. S.D. Ill. Local R. 7.1(c). However, even in the absence of a response, if defendants do not meet their strict burden of proof, the Court cannot enter summary judgment in their favor. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992). Here, there is no evidence to support Plaintiff's contention that Primex or General Dynamics is liable for benefits to which Plaintiff believes he is entitled. Plaintiff was never an employee of Primex or General Dynamics. Thus, no claim against these companies could be premised upon Plaintiff's termination. There is simply no evidence to suggest that these companies assumed liability for the relief Plaintiff requests. Primex and General Dynamic's motion for summary judgment is **GRANTED**.

## CONCLUSION

Defendants' motions for summary judgment (Docs. 43, 45, 47) are **GRANTED**. To the extent Plaintiff's responses to defendants' motions for summary judgment (Doc. 51, 52) constitute a motion for leave to amend, such motions are **DENIED**. Plaintiff's sur-reply to Olin's motion for

summary judgment (Doc. 54) is **STRICKEN**.  Plaintiff's claims against all defendants are **DISMISSED WITH PREJUDICE**.

  **IT IS SO ORDERED.**

  **Dated: December 16, 2005.**

                /s/ J. Phil Gilbert
               **J. PHIL GILBERT**
               **U.S. District Judge**